JAMES BIGLER and others, Respondents, v. THE MAYOR, Etc., OF THE CITY OF NEW YORK, Appellants.

9   253
132a  583

*Contract with city of New York — power of department of docks to extend — right of, to consent to receive other materials than those specified — Inspection of materials — certificate — effect of.*

After due advertisement for proposals, as required by statute, the plaintiff entered into a contract with the city of New York by which he agreed to furnish plank, timber and logs for the use of the department of docks, upon requisitions to be made by it. The contract was dated July 29, 1873, and was to continue in force for the term of one year. In an action to recover for materials alleged to have been furnished under this contract, it appeared that a portion of them were furnished upon requisitions made after the expiration of the year.

*Held,* that the department of docks had no power by mere requisitions, to continue the contract in force after it had expired by its own terms, and that no recovery could be had thereunder for the materials furnished in compliance with such requisitions.

The contract provided that all the materials were " to be subject to the inspection of the superintendent of repairs and supplies of the department of docks;" there was no provision therein rendering his certificate conclusive upon the parties, or making it the basis for payments to be made under the contract.

*Held,* that the only effect of this provision was to subject the materials furnished under the contract to his inspection and approval, and that neither party to the contract was concluded thereby.

*Held,* further, that under the said contract the department of docks had no power to make requisitions for materials differing substantially from those specified in the contract, and that the fact that such materials were furnished to, and used by the said department under requisitions duly made therefor, would not authorize the contractor to recover therefor under the said contract.

Where contracts are made by the city upon sealed bids and proposals under the statute, specifying with particularity the articles to be delivered, there is no power in any board or officer of the corporation to receive in compliance therewith inferior or less valuable articles, under the pretext that they will answer the purposes of the city as well or better than those specified in the contract.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury.

This action was brought to recover the value of certain materials furnished to the department of public works under a contract, entered into between the plaintiff and the defendant. The case has already been before the General Term, where a new trial was granted on the ground that evidence offered on the part of defendant had been improperly rejected. (13 S. C. R. N. Y. [6 Hun], 241.)

*Wm. C. Whitney,* for the appellants.

*Enoch L. Fancher,* for the respondents.

DAVIS, P. J. :

The contract upon which this action is brought is admitted by the answer. The answer denies, however, that the materials alleged to have been furnished under the contract were worth the sum charged therefor, as alleged in the complaint, and denies that

the balance claimed by the plaintiffs is due upon the contract. It further alleges that the materials furnished were not merchantable, but were inferior, and unfit to be used for the purposes mentioned in the contract; and that plaintiffs, with full knowledge of such facts, fraudulently procured the certificates set forth in the complaint. The answer further alleges that, by the terms of said contract, the kind and size of the timber and supplies to be furnished by the plaintiffs to the defendant were specified, and that the said plaintiffs did not furnish the timber required by said contract, neither as to size nor quality. It then alleges, by way of counter-claim, that the plaintiffs furnished inferior timber and supplies, and fraudulently caused the same to be certified to the defendants as being the kind called for by said contract; and that, by reason thereof, the defendants have been damaged, and inferior and unfit materials have been placed in their docks and piers, through the failure of the plaintiffs to perform their contract, and the fraudulent representations made by them in reference to said materials, in a sum greater than the amount claimed in this action, which damages they ask to recoup. This answer, we think, amongst other things, fairly puts in issue the question of the performance of the contract, in addition to setting up the alleged defense of fraud. The contract bears date the 29th of July, 1873, and, by its terms, was to continue in force for the period of twelve months from the date of the execution thereof. It was executed, on the part of the city, by the department of docks, and was made, as appears in the case, after advertisement for sealed proposals, as required by the statute, for the delivery of the materials specified in the contract. The plaintiffs, by the contract agreed to furnish, at their own proper cost and expense, the materials specified therein in such quantities, and at such places in the city of New York, as might be required by the party of the first part, and on their default to furnish such materials when called for by requisition under the contract, then the city was to have the right to purchase in open market the materials called for in such requisition, and to deduct the excess of cost from any money due to the plaintiffs from the city. The contract also contained this provision: "All materials delivered by the party of the second part to be subject to the inspection of the superintendent of repairs and supplies of the

256 BIGLER *v.* MAYOR.

department of docks." It appeared in evidence that, during the period covered by the contract, the department of docks made requisition upon the plaintiffs for large amounts of timber and lumber, in conformity to the specifications of the contract as to size, length and kind of timber or lumber, and that the materials so called for were delivered upon such requisitions by the plaintiffs. It also appeared in evidence that the department of docks made requisitions, from time to time, upon the plaintiffs for the delivery of large quantities of lumber and timber *which did not conform to the specifications of the contract,* and that these were also delivered by the plaintiffs. The plaintiffs showed that of the amount of materials so delivered the superintendent of repairs and supplies certified various bills to be correct, amounting in the aggregate to about $4,000. Some of these bills were delivered upon requisitions of articles within the specifications of the contract, and others were articles not within such specifications. The plaintiffs also showed the delivery of a large number of bills of materials upon requisitions of the department of docks, amounting in the aggregate to about $82,000, which were not certified by the superintendent of repairs and supplies, but which were certified, in part by the engineer-in-chief of the department of docks, and in part by his assistant, and in part by some other officer or employe of that department. These last named officers simply certified that the *quantity* named in each bill was correct. Each of the various bills presented by the plaintiffs referred to the requisitions upon which the materials therein mentioned were delivered, and the certificates, so far as those of the superintendent of repairs and supplies are concerned, must be held to refer to such requisition, and to certify that the bills are correct in respect to their conformity to the requisitions ; and the certificates of the other officers, that they are correct in respect to the quantity delivered and charged in the bills under such requisitions.

The only question submitted to the jury by the learned court was, whether there was fraud in the giving of these certificates, and any collusion between the officers of the dock department and the plaintiffs ; and the court held, in substance, that if there was not such fraud or collusion, the plaintiffs were entitled to recover by virtue of the certificates above mentioned.

The court was requested by the defendants' counsel to charge that under the contract declared on in this action, the plaintiffs were required to furnish merchantable timber and lumber, and if they failed to do so this action cannot be sustained, and the verdict must be for the defendant.

Upon this question the court ruled as follows: "In regard to that proposition, the certificates required by the contract having been given, unless you can impeach them for fraud, you cannot raise the question whether the lumber was or was not merchantable," and to this ruling the defendants excepted. The court was also requested to charge that if timber or lumber, less than the size called for in the contract, was furnished by plaintiffs to defendants, the plaintiffs cannot recover for it in this action. To which the court said: "The ruling in regard to the certificates covers that also for the same reason;" and to this the defendants' counsel excepted. The court was also requested to charge that the bills and requisitions in evidence are only *prima facie* evidence of what was done, and are subject to contradiction and explanation. The court said: "In regard to that, I will say that the certificates are *prima facie* evidence of what was done, and absolute evidence of what was done unless impeached for fraud;" and to this the defendants' counsel excepted. There were also large numbers of requests to charge in respect to the delivery of the timber and lumber less in size and length than that specified in the contract, to all of which the court refused to charge as requested, and exceptions were taken, and in answer to one of which the court said: "I intend to be understood as distinctly charging that the city having taken and accepted this lumber, and this lumber having been put into its piers, they are liable for the contract prices." The court was requested to charge also that the dock commissioners, after making the contract in suit, had no power or authority to accept as deliveries upon the contract, timber of shorter average length and smaller sizes than those called for by the contract. To which the court said: "I will charge that, but I say, as I have all along said, that the certificates cover that difficulty, if given in good faith." The defendants' counsel excepted. The counsel requested the court to charge, in respect to the bills put in evidence, which have no certification by the superintendent of repairs and supplies, that the

plaintiffs could not recover for them under the contract; upon which the court ruled, that "it was competent for the defendants to waive certificates by the superintendent of repairs and supplies, and to delegate the power to certify to the engineer-in-chief or engineer in charge of the works, and if the jury believed that the engineer-in-chief or engineer in charge of the work, or whoever certified as to the bills, gave his signature in good faith, and that the defendants accepted the lumber and put it into their docks, they are precluded just as much by his certificate as if the certificate was given by the superintendent of repairs and supplies." The defendants' counsel excepted to the refusal, and also to this ruling. At the close of the charge, the defendants' counsel called the attention of the court to the bills not certified by the superintendent of repairs and supplies, and to the fact that the certificates on those bills were simply that the quantity is correct; and the court further charged that if there was no other certificate, if the officers of the corporation passed the lumber and certified it without fraud, the city is bound by the certificates. To this charge the defendants excepted. The court also charged the jury that it was competent for the dock department, as officers of the corporation, to waive the provision which subjected the materials to the supervision of the superintendent of repairs and supplies, and to delegate that power to the chief-engineer in charge.

It appeared by the requisitions and bills produced, that a portion of the materials were delivered in the latter part of August, 1874, about a month after the expiration of the contract, and that the materials so delivered did not conform to the specifications of the contract. These bills and the vouchers relating thereto were objected to by the defendants on the ground that the transaction occurred after the expiration of the year limited by the contract. The objection was overruled, the evidence was received under the exception of the defendants, and the amount of such bills are included in the verdict. In respect to the last named exception, we think it very clearly well taken; after the expiration of the year the dock commissioners had no power, by mere requisition, to continue the contract; it had expired by its own terms, and subsequent deliveries of materials in conformity to its specifications could not in our judgment be recovered for in an action upon the

contract. Much less would the right to recover them under the contract exist, if they were articles not conforming to the contract. That they were of this latter character is readily seen by reference to the requisition on which they were delivered. For instance, requisition number 4,643, which was dated September 7, 1874, was for 10,558 feet, ten by ten yellow pine. The contract provides only for yellow pine timber twelve inches square, averaging forty feet long, a different, and, as the evidence tends to show, more valuable article. In respect to the items covered by the objection referred to, we think the ruling of the learned judge was erroneous. The dock commissioners could not in that manner extend the contract without plainly violating the law regulating the system of contracts.

The contract in this case was drawn with such extreme looseness as to open a wide door for collusion and fraud. Upon the question whether there was or was not collusion or fraud there was conflicting evidence, and the learned court submitted that question to the jury whose verdict in favor of the plaintiffs must be regarded as disposing of it. The only remaining question arises upon the rulings and exceptions thereto, in respect to the force of the certificate given by the superintendent of repairs and supplies, and the certificates given by the engineers and various other officers, and of the authority of the dock commissioners to clothe the last named officers with power to certify, and of the effect of their action in having received and used the materials, furnished upon requisitions, in the construction of docks. The provision of the contract is, that all materials delivered are to be subject to the inspection and approval of the superintendent of repairs and supplies. There is no provision that his certificate shall be conclusive upon the parties, and none that such certificate shall be the basis for payments to be made under the contract. The language does not confer upon the officer any power to alter the contract in any part whatever; it simply subjects the materials to be delivered under the contract to his inspection and approval, and does not conclude either party by such inspection and approval.

In *Glacius* v. *Black* (50 N. Y., 145), the language of the contract was this : " The materials to be furnished shall be of the best quality, and the workmanship performed in the best manner, sub-

ject to the acceptance or rejection of Edward Wall, architect, and all to be in strict accordance with the plans and specifications which are signed by the parties of the second part, and form part of this contract." The architect also had power to reject any part of the work or materials, and in such case the builders were to remedy the defects. The court held that the acceptance by the architect under the contract was not conclusive, but would be important in establishing that the work and materials were in compliance with the contract, but would not be sufficient to sustain a recovery if it appeared that the contract had not been substantially performed; and the court distinguished the case from *Wyckoff* v. *Meyers* (45 N. Y., 143), by the fact that in the latter case the contract provided that payment should be made upon the certificate of the architect and that disputes respecting the construction and meaning of the plans and specifications should be submitted to the architect, whose decision should be conclusive upon the parties; and the court cites with approval the case of *Bird* v. *Smith* (64 E. C. L. R., 785), where a quantity of iron rails of certain weights, shapes and dimensions were alleged to have been inspected certified and approved by an agent of the plaintiffs, as provided in the contract, and it was held, on demurrer, that this averment was not conclusive against the defendants.

The provision of the contract in this case, as we think, simply subjects the materials to be delivered under it to the inspection and approval of the officer named; and while his certificate would be *prima facie* sufficient, it cannot be held to conclude either party, nor be an absolute prerequisite to payment by the defendants; for if the plaintiffs delivered materials upon requisitions in exact conformity to the contract, there seems to be no doubt that they would be entitled to payment therefor if accepted, although not actually inspected and approved by the superintendent, for such certificate is not made a condition precedent to payment.

If these views be correct it follows as a matter of course, that the certificates such as they were, by the officers delegated to that end by the department, are by no means conclusive upon the city. They may properly be regarded as *prima facie* evidence, but they were not entitled to the conclusive effect given them by the learned judge at the trial. And it follows that the plaintiff was

entitled to recover, if any thing remained due (the jury having found in his favor on the question of fraud), for all articles delivered in substantial compliance with the provisions and specifications of the contract. His contract was not broken by any failure to deliver on his part, so as to absolutely preclude a recovery under the general rule that contracts not performed according to their terms cannot be enforced by an action at law, because the contract is in such form that it was fully performed on his part whenever he delivered upon a requisition made under it, such materials as are specified in the contract; and although the time of payment is not specified in the contract, yet by its true construction we think the right to demand payment for the articles delivered upon the requisitions which conformed to the contract, arose whenever such delivery was completed.

But the most important question in the case is, whether, under such a contract, the power existed on the part of the department of docks to make requisitions which departed from the specifications of the contract and were not fairly covered by its terms. If this be so, then all the protection to the city provided for by the statute requiring advertisement for sealed proposals, and contracts with bonds and security for their performance, is of no substantial value, for, under such a contract, the department might accept the bid of " A.," at a fixed price for the articles specified for competition in the advertisement, and then under his contract for the delivery of such articles, permit him by requisition to deliver those much inferior in quality and value. This case itself illustrates the danger of such a power. One of these specifications, for instance, is " southern yellow-pine timber, twelve inches square, averaging forty feet long, forty dollars per thousand." If under that a requisition may be made for yellow pine lumber six inches square and ten or twenty feet long, it will entitle the contractors to forty dollars per thousand for that kind of timber. It is manifest, since that article would be of far less value than the price stipulated for the different material, that the contractor could be greatly benefited and the city injured, at the option of the department. It appears in the case that the price of timber and plank materially differs, depending upon its length, and that a quantity that averages forty feet in length and twelve inches wide, is worth much

more in the market than if it were twenty or twenty-five feet in length and of less width. It is, however, true, as was said by the learned judge, " that the dock commissioners had the right to order timber between the extreme limits specified in the contract as to both the length and width of the plank." The contract, in respect to many of the materials is an elastic one. For instance, under the first specification, which is " white pine plank to average forty feet long, five to six inches thick, twelve inches and upwards wide, at forty-two dollars per thousand," planks averaging forty feet long and either five or six inches thick, or between those thicknesses, and of any width above twelve inches could be properly required. But where the kind and size in all respects are definitely prescribed, a requisition could not properly be made for a substantially different, inferior and less valuable article. The contractors would not be bound to obey such a requisition, and would not violate their contract in refusing to obey it. They must be held to know that such a requisition is not in conformity to the contract; and by any delivery upon it they are simply obeying the requisition but not fulfilling the stipulations of the instrument under which it purports to be made. Immaterial or slight variances are of no importance; but material differences, which largely affect the value of the articles, are pregnant with all the mischiefs which the law regulating contracts by advertisement and sealed proposals, was enacted to prevent.

But it is said that the articles furnished under requisitions which were substantial departures from the contract, in this case, were better adapted to the construction of some of the docks than the articles specified in the contract. This was doubtless so ; but it is no answer, for while they may be better adapted to narrow docks, yet it is manifest they are far less expensive, and therefore should be obtained under proposals and contracts which secured them at their *real value*, and not under requisitions which accepted them in lieu of something of much higher value, stipulated for in the contract itself. We think, therefore, that neither the dock commissioners nor any of their subordinates had any power to require or accept, under this contract, any materials which substantially differed from the provisions of the contract, to the prejudice or injury of the city in respect to price.

In this case it will be easy, upon the papers presented upon another trial, to separate the articles fairly within the contract and those clearly outside of it. The former must be paid for by the city under the contract itself; the latter cannot be recovered in this action, whatever other remedies the plaintiffs may have against the city.

We feel bound to hold it to be sound law that, if contracts are made by the city upon sealed bids and proposals, under the statute, specifying with particularity the articles to be delivered, there is no power in any board or officer of the corporation to let down the contract, in material respects, to inferior or less valuable articles, under the pretext that they will as well, or better, answer the purposes of the city. To permit the contrary rule to prevail would be injurious and unjust to all bidders for contracts, provocative of collusion and fraud between the officers and the successful bidder, and pecuniarily injurious to the city. It would virtually annul the contract system, by destroying its most important safeguards, at the option of negligent or corrupt officials.

For these reasons we think the judgment in this case is erroneous, and must be reversed and a new trial ordered, with costs to abide the event.

DANIELS, J., concurred; BRADY, J., dissented.

Present — DAVIS, P. J., BRADY and DANIELS, JJ.

Judgment reversed, new trial ordered, costs to abide event.